IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**REBECCA OLIVER,**

    **Plaintiff,**

    vs.                               **Civil Action 2:11-cv-447**
                                          **Judge Sargus**
                                          **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

This is an action institute under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits and supplemental security income. This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 14, and supplement thereto, Doc. No. 20, and the Commissioner's *Memorandum in Opposition*, Doc. No. 24.

## Background

Plaintiff Rebecca Oliver filed an application for disability insurance benefits in September 2004. The administrative denial of that application was remanded by this Court, pursuant to Sentence 4 of 42 U.S.C. § 405(g), for further consideration of plaintiff's severe anxiety disorder. *Oliver v Commissioner of Social Security*, 2:07-CV-625(S.D. Ohio September 30, 2008).

In September 2007, plaintiff filed applications for disability insurance benefits and supplemental security income, which applications were consolidated with the earlier application. On June 2, 2009, plaintiff, represented by counsel appeared and testified at a consolidated administrative hearing, as did W. Bruce Walsh, Ph.D., who

testified as a vocational expert.

In decisions dated September 2, 2009, the administrative law judge denied all applications.  In both decisions, the administrative law judge found that, despite plaintiff's severe physical and mental impairments, she nevertheless is able to perform medium work reduced by her mental impairments.  Although this residual functional capacity does not permit plaintiff to perform her past relevant work as a cashier, the administrative law judge relied on the testimony of the vocational expert to find that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, including such jobs as a cleaner, order picker and marker/labeler.  Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act.  Those decisions became final when the Appeals Council declined to assume jurisdiction concerning the 2004 application and declined review of the 2007 applications.

Plaintiff was 56 years old on the date that the administrative law judge issued her decisions.  She has a 9th grade education with some special education classes and prior relevant work as a cashier.

**Evidence of Record**[1]

Plaintiff has been treated for both physical and mental impairments by a number of providers.  Mark Hodges, M.D., an internist, treated plaintiff for diabetes, hypertension, hyperlipidemia, anxiety and fibromyalgia from 2004 through April 2007.  In October 2004 and August 2005, Dr. Hodges commented that plaintiff

---

[1] The evidence relevant to plaintiff's first application is set out in *Oliver v. Commissioner of Social Security*, 2:07-cv-625, *Report and Recommendation*, Doc. No. 14, and will not be repeated here except to the extent necessary to address the issues determinative to the resolution of this case.

2

had experienced a good response to her medication and had no physical or mental impediments to work. A.R. 151, 154.

Dennis Mesker, M.D., began treatment of plaintiff in June 2007 for diabetes, hypertension, myalgia, heart palpitations, hyperlipidemia and anxiety. In November 2007, Dr. Mesker indicated that plaintiff had a "good" ability, from a mental standpoint, to engage in work-related activities. A.R. 490-91. From an exertional standpoint, Dr. Mesker opined that plaintiff was able to perform light exertion, with some postural restrictions; she did not require a sit/stand option, but experienced moderate to severe pain. A.R. 492.[2]

Albert G. Gay, M.D., first saw plaintiff in June 2008. After clinical exam, Dr. Gay diagnosed diabetes mellitus, uncomplicated, Type II; hypertension; anxiety, nos; myalgia/myositis, nos; and nasal congestion. A.R. 526-27.[3]

Beverly Yamour, M.D., saw plaintiff in October 2008 and diagnosed adult onset diabetes mellitus, Type II, with good control, and an S3 gallop and grade two systolic heart murmur. A limited neurological examination was normal. A.R. 497. X-rays of the lumbar spine showed early degenerative disc disease throughout the lumbar and lower thoracic spine and mild facet arthropathy from L4-S1. A.R. 498. In January 2009, Dr. Yamour characterized plaintiff's diabetes as "under fairly good control." A.R. 500.

Glenn A. Rogers, M.D., first saw plaintiff in March 2009 and characterized her diabetes as "uncontrolled." A.R. 533. Her

---

[2] The parties agree that the first page of Dr. Mesker's report is not included in the record. See A.R. 491-92. The administrative law judge found, based on the representation of plaintiff's counsel, that Dr. Mesker indicated that plaintiff could lift no more than 10 pounds, could stand and walk for six hours in a workday, for one hour at a time, and could sit without restriction. A.R. 569, 595.

[3] There is some indication in the record that plaintiff was dismissed from treatment by Dr. Gay. See A.R. 501.

3

hypertension was controlled. Dr. Rogers discussed a change in plaintiff's anti-anxiety medication. *Id.* In April 2009, Dr. Rogers diagnosed probable bipolar disease II and noted complaints of back pain. A.R. 531. By the following month, plaintiff's diabetes was improving, although her hyperlipidemia was worsening. A.R. 530.

Plaintiff has also been evaluated and treated for mental conditions. In 2004, plaintiff was consultatively evaluated, at the request of the state agency, by James Tanley, Ph.D. On the WAIS-III, plaintiff achieved a verbal IQ score of 69, a performance IQ score of 66 and a full scale IQ score of 66, which placed her in the mild range of mental retardation. According to Dr. Tanley, "in the absence of any evidence [to] the contrary, these results appear to be valid." A.R. 145. Dr. Tanley did not diagnose mental retardation, however, because plaintiff's school records were not available and an "onset prior to age of 18 has not been established." *Id.* Dr. Tanley also opined that plaintiff's anxiety left her with a Global Assessment of Functioning ["GAF"][4] of 70, which is indicative of mild impairment. Should plaintiff be determined to be mentally retarded, however, Dr. Tanley would assess her GAF as 60, which is suggestive of moderate impairment. A.R. 146.

In May 2005, Guy Melvin, a state agency psychologist, reviewed the record and concluded that plaintiff's mental impairments, including her cognitive functioning, neither met nor equaled a listed impairment, including Listing 12.05C, because plaintiff's "adaptive

---

[4]"The [Global Assessment of Functioning] GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in these areas." *Norris v. Comm'r of Soc. Sec.*, No. 11-5424, 2012 WL 372986 (6th Cir. Feb. 7, 2012).

behavior suggests [borderline intellectual functioning]." A.R. 162, 166. Plaintiff's performance on the IQ test administered by Dr. Tanley "appear[s] to underestimate her function" in light of her tested memory and reading ability. A.R. 178. That assessment was affirmed by another state agency psychologist, Karen Jerry, Ph.D., in October 2005. *Id*.

In June 2007, Stephen R. Yerian, Psy.D., performed a consultative psychological evaluation of plaintiff at the request of the state agency. Based upon his examination of plaintiff's mental status, and on plaintiff's reported educational and occupational history, Dr. Yerian estimated that plaintiff has low average intellectual abilities. A.R. 451. Based upon the history reported by plaintiff "and the available information," Dr. Yerian diagnosed a panic disorder without agoraphobia and placed plaintiff's GAF at 55. A.R. 452.

In July 2007, Melanie Bergsten, Ph.D., a state agency psychologist, reviewed the evidence of record and again concluded that plaintiff's cognitive functioning neither met nor equaled a listed impairment, including Listing 12.05C, because plaintiff's proper diagnosis was borderline intellectual functioning. A.R. 454, 458. According to Dr. Bergsten, plaintiff was moderately impaired in all work domains. She was able to perform simple repetitive tasks in a low stress setting "in which relating [to others] is either reduced or superficial only." A.R. 470.

In June 2009, after evaluating plaintiff's complaints of anxiety, Dr. Rogers "strongly recommended establishing with a psychiatrist." A.R. 529. However, plaintiff testified that she has not done so because she cannot afford to do so. A.R. 309.

**June 2, 2009 Administrative Hearing**

At the June 2, 2009 administrative hearing, plaintiff testified

5

that she was fired from her last job because of her anxiety attacks: "{B]ecause of the anxiety, I was messing up." A.R. 289. She experiences the attacks when in strange places or around 10 or more people and, sometimes, in her sleep. A.R. 291. Her diabetes, which requires that she administer four insulin shots per day, would also interfere with her ability to work. A.R. 294. Her back pain, for which she takes Tylenol, A.R. 296, limits her ability to stand to 15 minutes at a time. A.R. 295. She can walk for no more than two blocks. *Id.* She can sit for up to one hour before stiffness requires that she change position. A.R. 296.

The vocational expert, was asked to assume a claimant with plaintiff's vocational profile and the functional capacity for medium work consisting of simple repetitive tasks with only occasional or superficial interaction with others in a nonpublic work environment. According to the vocational expert, such a claimant could perform 40 percent of the medium, unskilled occupational base. A.R. 319. Asked to assume the credibility of plaintiff's subjective complaints, the vocational expert testified that such a claimant could not perform any job. A.R. 320.

**<u>Administrative Decisions</u>**

In her decisions, the administrative law judge found that plaintiff's severe impairments consist of diabetes mellitus, early lumbosacral degenerative disc disease, a history of heart palpitations and a grade 2 systolic murmur, hypertension, elevated lipids, mild obesity, an anxiety disorder, a history of depression and borderline intellectual functioning. *Supplemental Certified Administrative Record* ["Supp. A.R."], 584. The administrative law judge determined that plaintiff's impairments, whether considered singly or in combination, neither meet nor equal a listed impairment, including

6

List 12.05C. In this regard, the administrative law judge noted that no treating provider has diagnosed mental retardation, there is no evidence of qualifying IQ scores or adaptive deficits prior to age 22, and that plaintiff's scores on certain subtests administered by Dr. Tanley suggest that plaintiff is not mentally retarded. Supp. A.R. 568, 593-94.

The administrative law judge went on to find that plaintiff has the residual functional capacity for medium work that does not require more than low stress, *i.e.*, simple, repetitive nonpublic tasks with only occasional superficial interaction with others and without strict quotas or heavy production demands. Supp. A.R. 568, 594. In considering plaintiff's capacity for physical exertion, the administrative law judge rejected the May 2007 assessment by a state agency physician, who concluded that plaintiff had no severe impairment, *see* A.R. 380, because it was not based on additional medical evidence generated after that assessment. Supp. A.R. 569, 594-95. She also rejected Dr. Hodges' opinions that plaintiff has no physical limitations, because "the evidence of the record as a whole, when providing the claimant with the full benefit of all reasonable doubt, leads to a finding that the claimant is more limited than assessed by this treating physician." *Id*. She also rejected Dr. Mesker's opinion that plaintiff is capable of only light exertion because "it is not consistent with or well supported by the medical evidence of the record as a whole, including this doctor's own treatment notes, which reflect generally normal physical examinations." *Id*. In assessing plaintiff's mental residual functional capacity, the administrative law judge accepted the opinions of the reviewing state agency psychologists "as an accurate representation of the claimant's mental status. Supp. A.R. 570, 595.

The assessments of the two consultative psychologists were accorded "some weight as being generally supported by and consistent with the evidence of the record as a whole. . . ." *Id*. However, the evidence suggested that plaintiff is more limited than assessed by either Dr. Hodges and Dr. Mesker, who both opined that plaintiff had no mental limitations. *Id.*

The administrative law judge provided extensive consideration to plaintiff's subjective complaints but found that those complaints were not fully credible. Supp. A.R. 570-75, 596-600.

Relying on the testimony of the vocational expert, the administrative law judge found that plaintiff's residual functional capacity precluded the performance by her of her past relevant work as a cashier but would permit the performance of a significant number of jobs in the national economy. Supp. A.R. 575-76, 600-602.

The administrative law judge accordingly found that plaintiff was not disabled within the meaning of the Social Security Act.

**Discussion**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v.*

*McMahon,* 499 F.3d 506, 509 (6{th} Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6{th} Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors* and *Supplemental Statement of Errors*, plaintiff contends that the administrative law judge erred in concluding that plaintiff's cognitive functioning does not satisfy Listing 12.05C, that the administrative law judge violated the "treating physician" rule when she rejected Dr. Mesker's opinion that plaintiff is limited to only light exertion, that the administrative law judge failed to properly evaluate plaintiff's credibility and that the hypothetical posed to the vocational expert was flawed because it did not include all of plaintiff's limitations.

Listing 12.05 requires, under appropriate circumstances, a finding of disability based on the claimant's mental retardation:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when . . .
> (C) [The claimant has demonstrated] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

9

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05(C). A claimant must establish three elements in order to satisfy Listing 12.05(c): that she experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2)that she has a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3) that she suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id*. *See also Foster v. Harris*, 279 F.3d 348, 354-55(6th Cir. 2001). Under the Social Security regulations, "loss of adaptive functioning" is "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P., App. 1 §12.00C4. *See also West v. Comm'r Social Sec. Admin.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007)("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills"). Present IQ scores do not alone establish that the claimant suffered subaverage intellectual functioning or deficits in adaptive functioning during the developmental period. "A claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during his developmental period." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491-92 (6th Cir. 2010), citing Foster, 279 F.3d at 354-55.

This Court concludes that the administrative law judge's determination that plaintiff's cognitive functioning does not satisfy Listing 12.05C enjoys substantial support in the record. Although the

10

IQ scores reported by Dr. Tanley were qualifying, and although plaintiff was apparently assigned to some special education classes in school, the state agency reviewing psychologists and the consulting psychologist Dr. Yerian opined that plaintiff's cognitive functioning did not meet the Listing's requirement of subaverage intellectual functioning or deficits in adaptive functioning prior to the age of 22. The administrative law judge did not err in basing her determination on this substantial evidence.

However, the Court also concludes that the administrative law judge's finding that plaintiff has the residual functional capacity for medium exertion lacks substantial support in the record. The administrative law judge rejected the assessments of every professional who expressed an opinion as to plaintiff's exertional capacity for work and found plaintiff's subjective complaints in this regard to be not entirely credible. Nowhere does the administrative law judge explain the basis for her determination that plaintiff is able to engage in medium exertion. Under these circumstances, it cannot be said that the finding of the administrative law judge in this regard is supported by substantial evidence. The action must therefore be remanded for further consideration in this regard.

Having concluded that the action must be remanded for further consideration of plaintiff's residual functional capacity, the Court need not and does not address plaintiff's remaining arguments.

It is therefore **RECOMMENDED** that decision of the Commissioner be reversed and that this action be remanded for further consideration of plaintiff's residual functional capacity.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                      *s/Norah McCann King*
                                           Norah M<sup>c</sup>Cann King
                               United States Magistrate Judge

Date: July 31, 2012